SMEETS v GENESEE COUNTY CLERK

Docket No. 125978. Submitted January 8, 1992, at Lansing. Decided April 20, 1992, at 9:05 A.M.

James Smeets and four other members of the Fenton Township Board petitioned the Genesee Circuit Court for a writ of mandamus to compel the Genesee County Clerk to determine that recall petitions filed against them were insufficient because they allegedly lacked the minimum number of signatures necessary to call a special election. The respondent had determined that the petitions did contain the necessary number of signatures mandated by statute, MCL 168.955; MSA 6.1955. The dispute involved whether the calculations should be based on the entire Fenton Township electoral district as it existed at the time of the last general election in 1986 or whether the electoral district as it existed at the time of the filing of the petitions in 1990, following the 1988 incorporation of the Village of Linden and removal of that city from the Fenton Township electoral district, should be used. The court, Philip C. Elliott, J., found that the respondent properly had based his calculations on the district as it existed at the time of the filing of the petitions and denied the writ. The petitioners appealed.

The Court of Appeals *held:*

The court properly denied the petitioners' request for a writ of mandamus.

1. MCL 168.955; MSA 6.1955 mandates that the sufficiency of a recall petition is to be measured by reference to the number of votes cast for candidates for the office of Governor at the preceding general election in the electoral district of the officer sought to be recalled. The electoral district of the officers sought to be recalled in 1990 did not include the City of Linden. Linden electors therefore were not eligible to sign the 1990 recall petitions. The statute is properly interpreted as requiring that the recall petitions must contain the signatures of electors equal to at least twenty-five percent of the gubernatorial votes

REFERENCES

Am Jur 2d, Public Officers and Employees §§ 187-210.
See the Index to Annotations under Public Officers and Employees.

cast in the preceding general election within the confines of the electoral district as it exists at the time the petitions are filed.

2. The procedure employed by the respondent to estimate the number of gubernatorial votes previously cast within the 1990 boundaries of the electoral district was reasonable and acceptable. The petitioners were not harmed by the respondent's method of estimation.

Affirmed.

ELECTIONS — RECALL PETITIONS — COMPOSITION OF ELECTORAL DISTRICTS.

A recall petition must contain the signatures of electors equal to at least twenty-five percent of the gubernatorial votes cast in the preceding general election within the confines of the electoral district, as it exists at the time the petition is filed, of the officer sought to be recalled (MCL 168.955; MSA 6.1955).

*Hicks & Schmidlin, P.C.* (by *David J. Nickola*), for the appellants.

*Nancy K. Dillingham,* Assistant Corporation Counsel, for the Genesee County Clerk.

Amicus Curiae:

*Bauckham, Sparks, Rolfe & Thomsen, P.C.* (by *John H. Bauckham* and *Lynda E. Thomsen*), for the Michigan Townships Association.

Before: SULLIVAN, P.J., and WAHLS and J. W. FITZGERALD,* JJ.

WAHLS, J. In this case of first impression, petitioners appeal as of right from an order of the Genesee Circuit Court that denied their petition for a writ of mandamus. Petitioners, five members of the Fenton Township Board, had sought the writ to compel respondent, the Genesee County Clerk, to determine that recall petitions filed against them were insufficient because the peti-

* Former Supreme Court justice, sitting on the Court of Appeals by assignment.

tions lacked the minimum number of signatures necessary to call a special election. We affirm.

The facts of this case are unique in reported Michigan law, but not surprising. MCL 168.955; MSA 6.1955[1] dictates the number of valid signatures that must be obtained in order to invoke a recall election:

> The petitions shall be signed by registered and qualified electors equal to not less than 25% of the number of votes cast for candidates for the office of governor at the last preceding general election in the electoral district of the officer sought to be recalled. Upon written demand, the county clerk, within 5 days, shall certify the minimum number of signatures required for the recall of an officer in the governmental unit in which recall is sought. [*Id.*]

At the time the petition drive began, the last preceding general election had been held in 1986. In the 1986 election, a total of 3,673 votes had been cast in Fenton Township for gubernatorial candidates. After the 1986 election, however, the boundaries of Fenton Township and its concurrent electoral district changed significantly. By the time of the petition drive, the Village of Linden, a part of Fenton Township in 1986, had become incorporated as a city and was no longer a part of the Fenton Township electoral district.

Five petitions that sought the recall of the five petitioners in this action were filed with respondent's office on January 2, 1990. The petitions

---

[1] MCL 168.955; MSA 6.1955 is based on Const 1963, art 2, § 8, which provides in part:

Laws shall be enacted to provide for the recall of all elective officers except judges of courts of record upon petition of electors equal in number to 25 percent of the number of persons voting in the last preceding election for the office of governor in the electoral district of the officer sought to be recalled.

were then sent to the Fenton Township Clerk to compare the names and signatures with the township's voter-registration records.[2] The number of valid signatures on the five petitions was then determined to range between 849 and 875.

Respondent faced a problem. If twenty-five percent of the number of gubernatorial votes cast in the electoral district as it was constituted in 1986 was used to determine whether the number of signatures on the petitions was sufficient, then each petition was required to have a minimum of 918 valid signatures. Because of the 1988 incorporation of the Village of Linden, however, Linden voters were no longer in the Fenton Township electoral district. Respondent believed that the proper voter base by which the sufficiency of the petitions should be measured was the number of gubernatorial votes cast in the 1986 election within the current confines of the Fenton Township electoral district. This led to an additional problem. In 1986, the Village of Linden was split between two Fenton Township precincts, Precinct 3 and Precinct 4. Parts of these precincts remained within the Fenton Township electoral district after Linden's incorporation. Not all of the electors in these precincts who had voted in 1986 had cast a vote for the office of governor, and it was the number of gubernatorial votes that had to be determined in order to test the sufficiency of the recall petitions. Although respondent knew the total number of votes cast in each precinct, and also what portions of the total number of votes were cast in the township and the village, he had no way of knowing which voters had not voted for a candidate for governor. The following information on votes cast in 1986 was available to respondent:

[2] MCL 168.961; MSA 6.1961.

|                     | Precinct 3 | Precinct 4 |
|---------------------|------------|------------|
| Total               | 820        | 732        |
| Linden              | 417        | 184        |
| Fenton Twp          | 403        | 548        |
| Gubernatorial votes | 793        | 711        |

In order to estimate the number of votes cast for governor in Linden, respondent assumed that the number would be in like proportion as that for Precinct 3 and Precinct 4 as a whole. Out of the 1,552 total votes cast in the two precincts, 601 (thirty-nine percent) were cast by Linden voters. Therefore, out of the 1,504 votes cast for governor, respondent estimated that 582 (thirty-nine percent of 1,504) had been cast by Linden voters. Respondent then subtracted 582 votes from the 1986 Fenton Township gubernatorial vote total of 3,673, leaving 3,091 votes cast for governor in Fenton Township's 1990 boundaries. Respondent concluded that 773 signatures (twenty-five percent of 3,091) were required to force a recall election. A special election was subsequently held, and all five of the petitioners in this case were recalled from office.

On appeal, petitioners' argument is straightforward: The electoral district at issue is Fenton Township; 3,673 votes were cast for governor in Fenton Township in 1986, and, under MCL 168.955; MSA 6.1955, the petitions were required to have at least 918 signatures. Although this argument is appealing on its face, we must respectfully disagree. We also readily acknowledge that no statutory or case law authority exists for the procedure employed by respondent to determine the number of signatures required. Nonetheless, our understanding of the meaning and purpose[3] of MCL 168.955; MSA 6.1955 forces us to

---

[3] The purpose of the recall statutes is to provide citizens with a

conclude that the trial court properly denied petitioners' request for a writ of mandamus. We will review the denial of a writ of mandamus for an abuse of discretion, *Delly v Bureau of State Lottery,* 183 Mich App 258, 261; 454 NW2d 141 (1990), but the interpretation or construction of a statute is a question of law.

The unusual facts of this case require a close reading of MCL 168.955; MSA 6.1955. While the statute instructs that the sufficiency of a recall petition is to be measured by reference to the number of votes cast for governor in the preceding election, the votes to be counted are those "in the electoral district of the officer sought to be recalled." *Id.* The issue is whether "the electoral district of the officer sought to be recalled" refers to Fenton Township as it existed in 1986 or to its configuration on the date of the filing of the petitions. The mere fact that Fenton Township continued to exist as a separate electoral district after Linden incorporated does not compel the conclusion that the sufficiency of the petitions should have been measured by preincorporation standards. Although the statute makes reference to the past, it speaks to the present. Rather, "the electoral district of the officer[s] sought to be recalled" in 1990 did not include the City of Linden. Why then should Linden gubernatorial votes be included in the voting base that determines the sufficiency of a recall petition?

Moreover, MCL 168.954; MSA 6.1954 provides that "[t]he petitions shall be signed by registered and qualified electors *of the electoral district of the official whose recall is sought.*" Petitioners do not argue that an electoral district for the purpose of MCL 168.954; MSA 6.1954 is any different from

speedy, effective process to remove an unsatisfactory public official. *Wallace v Tripp,* 358 Mich 668, 678; 101 NW2d 312 (1960).

an electoral district for the purpose of MCL 168.955; MSA 6.1955. Each section of an act is to be read with reference to every other section so as to produce an harmonious whole. *Detroit v Detroit Police Officers Ass'n,* 408 Mich 410, 481; 294 NW2d 68 (1980), app dis 450 US 903 (1981) (opinion by WILLIAMS, J.); *Dep't of Treasury v Psychological Resources, Inc,* 147 Mich App 140, 146; 383 NW2d 144 (1985). Linden electors were not eligible to sign the 1990 recall petitions; they were not part of the Fenton Township electoral district. We would consider the result anomalous indeed if two identical terms, used in the same act and pertaining to the same subject matter, were to be given two different temporal meanings, one past and one present.

Petitioners' interpretation of MCL 168.955; MSA 6.1955 also has the potential of producing absurd results. For example, assume that the Village of Linden had contained ninety percent of the township electoral district's electors in 1986 and that these electors had cast ninety percent of the gubernatorial votes that year. Under petitioners' theory, in 1990, after Linden had departed from Fenton Township, a recall drive against township officials would be impossible, for even if all remaining electors (assuming that the number of these electors remained constant from 1986) in the township were to sign a recall petition, too few signatures would be obtained to equal twenty-five percent of the preincorporation voting base. Not only would this result, if it were to occur, be absurd, but it would also run afoul of Const 1963, art 2, § 8. Furthermore, because it is undisputed that Linden voters may not sign petitions to recall the petitioners in this case, petitioners' interpretation would essentially require that the signatures of more than twenty-five percent of Fenton Town-

ship's electors be obtained to invoke a recall election. Const 1963, art 2, § 8. It is our duty to give a statute a construction so as to render it constitutional, if possible, without doing violence to the Legislature's intent in enacting the statute. *People v McQuillan,* 392 Mich 511, 536; 221 NW2d 569 (1974); *People v Wilson,* 139 Mich App 205, 209; 362 NW2d 798 (1984).

We conclude that MCL 168.955; MSA 6.1955 requires that a recall petition must contain the signatures of electors equal to at least twenty-five percent of the gubernatorial votes cast in the preceding general election within the confines of the electoral district as it exists at the time the petitions are filed.

The next question is whether the procedure employed by respondent to estimate the number of gubernatorial votes previously cast within the boundaries of the electoral district as it existed on January 2, 1990, is acceptable. It was respondent's duty to ascertain the number of signatures required. Frankly, given our understanding of MCL 168.955; MSA 6.1955 and the unique circumstances of this case, we are at a loss in considering what else *could* have been done. The procedure used by respondent appears to us to be entirely reasonable given the information he possessed.

Petitioners correctly note that the number arrived at is only an estimate, not a definite, verifiable finding of the number of gubernatorial votes actually cast within the applicable boundaries. This is so because respondent lacked information concerning the precise number of Linden electors who had cast ballots in the general election of 1986, but did not vote for a candidate for governor. We need not decide this problematical point, however, for even if all the electors who had not cast a vote for governor were electors of Linden, the

result in this case would not have changed. In Precincts 3 and 4, 601 of the ballots cast were cast by Linden electors. In Precincts 3 and 4 as a whole, forty-eight electors did not vote for a candidate for governor. Assuming that all forty-eight were Linden electors, the worst case from the petitioners' point of view, Linden electors cast no more than 553 gubernatorial votes. Thus, no more than 3,120 votes (3,673 gubernatorial votes from the 1986 electoral district less 553 Linden votes) came from the township as it is currently defined. The greatest number of signatures that could be required of a petition is 780 (twenty-five percent of 3,120 votes). Because each of the petitions filed contained more than 780 signatures, petitioners were not harmed by respondent's method of estimation.

Finally, petitioners claim that respondent was without authority to interpret MCL 168.955; MSA 6.1955 in a manner adverse to them, interpretation of statutes being the province of the courts. It is true that county clerks do not possess any judicial authority, but are charged with performing only ministerial duties. *Karwick v Grajewski*, 253 Mich 110, 113; 234 NW 168 (1931). The problem with petitioners' argument is that the nature of respondent's duty under MCL 168.955; MSA 6.1955 was, at the least, open to disagreement. Respondent can hardly be faulted for attempting to carry out his duty as he, correctly, we believe, saw it. Respondent was not bound to accept petitioners' version of his duty where the type of duty imposed was open to question.

Obviously, the preferred resolution of this case would have been by reference to a statutory procedure for determining the minimum number of signatures required for a recall petition where the boundaries of an electoral district have changed

since the last general election. No such procedure exists, and as it is probable, if not certain, that the issues we have decided today will arise again in the future, we invite the Legislature to take action in this regard.

Affirmed.