210 Mich. App. 559 (1995)
534 N.W.2d 168
MILL CREEK COALITION
v.
SOUTH BRANCH OF MILL CREEK INTERCOUNTY DRAIN DISTRICT
Docket No. 158973.
Michigan Court of Appeals.
Submitted January 19, 1995, at Lansing.
Decided May 12, 1995, at 9:50 A.M.
Freeman McKenzie (by Timothy J. Lozen), for the plaintiff.
Hubbard, Fox, Thomas, White & Bengtson, P.C. (by Geoffrey H. Seidlein and Peter A. Teholiz), for the defendant.
Before: CAVANAGH, P.J., and HOLBROOK, JR., and MARKEY, JJ.
PER CURIAM.
Plaintiff appeals as of right from a judgment of the St. Clair Circuit Court sustaining two orders issued by the South Branch of Mill Creek Intercounty Drainage Board. The drainage board made a finding of necessity for work to be *561 performed on the south branch of Mill Creek Drain and for adding lands to the South Branch of Mill Creek Intercounty Drainage District. We affirm in part and reverse in part.
The South Branch of Mill Creek Intercounty Drainage District is an intercounty drainage district established pursuant to MCL 280.121 et seq.; MSA 11.1121 et seq. In August 1989, landowners in St. Clair County submitted a petition to the drainage board for the cleaning, relocating, widening, deepening, tiling, straightening, extending, or relocating along a highway of approximately one mile of the South Branch of Mill Creek Drain.
On June 7, 1990, a hearing was held, at which it was determined that the proposal was practicable. The drainage board then hired an engineer to survey the drain and to recommend methods for overcoming the problems with it. The engineer subsequently submitted a proposal for extending the drain that called for the excavation of 638,000 cubic yards of soil and other material at a cost of $2.9 million.
On January 23, 1992, the drainage board held a hearing to determine whether a project involving the drain was necessary. After examining the project proposed by the engineer and taking additional public testimony, the drainage board determined that the extension of the drain was necessary and conducive to public health, convenience, and welfare. In addition, the board found that it was necessary to add lands in Sanilac County to the drainage district. However, the board determined that the $2.9 million project submitted by the engineer would have to be scaled back.
Plaintiff filed a complaint in the St. Clair Circuit Court. Plaintiff contended, among other things, that the drainage board did not have authority to add lands in Sanilac County to the drainage district *562 because the petition requirements of § 135 of the Drain Code, MCL 280.135; MSA 11.1135, had not been met. The trial court concluded that because the drain itself was not being extended to a new county, § 135 did not apply. On November 6, 1992, the trial court issued an order upholding the findings of the drainage board and the order adding lands in Sanilac County to the drainage district.
Plaintiff contends that the circuit court erred in finding that the provisions of § 135 of the Drain Code apply only if the drain itself is to be extended into a new county. Defendant asserts that § 135 is inapplicable because the drainage board has the authority to add lands to the drainage district under § 197 of the Drain Code, MCL 280.197; MSA 11.1197.
Section 135 of the Drain Code provides, in pertinent part:
If at any time after an intercounty drainage district has been established and a drain has been located, established and constructed therein, it appears that it is necessary to extend the drain or drainage district into a county which was not part of the original intercounty drainage district, the lands in the county may be added to the district by presenting to the drain commissioner of one of the counties traversed or affected by the drain, a petition signed by 50% of the land owners whose land is traversed by the drain or proposed extended drain, which petition shall state the name or number of the drain, and the lands which it is desired to have added to the drainage district.... The board shall consider the petition and any evidence offered, and if it is determined that the extension of the drain or drainage district is necessary for the good of the public health, convenience or welfare, it shall then proceed to determine the just percentage of the whole cost of construction *563 which each county shall bear, and also determine the number of installments in which the drain taxes shall be collected.... If, in the opinion of the expanded drainage board, it is found necessary to add the lands to the drainage district, they shall also enter an order adding the lands.
The relevant portions of § 197 of the Drain Code provide:
(1) On receipt of a petition filed under this chapter, the commissioner or the drainage board may require a competent surveyor or engineer to make a survey of the drain or of the district.... If it appears that land has been added to the drainage district, the drain commissioner for a county drain, or chairperson of the drainage board for an intercounty drain, shall notify the board of determination who allowed the petition that the land should be added to the district. The drain commissioner or chairperson of the drainage board shall call a meeting of the board of determination. .. .
(2) ... [I]f the board of determination by a majority vote of members finds the proposed addition of the land to the drainage district necessary and conducive to the public health, convenience, or welfare, they shall make an order to that effect and file the order with the drain commissioner or drainage board.
At issue are the applicable petition requirements.[1] It is undisputed that the petitions submitted *564 to the drainage board contained a sufficient number of signatures to comply with § 197, but did not meet the requirements of § 135.
Statutory interpretation is a question of law that is reviewed de novo on appeal. Smeets v Genesee Co Clerk, 193 Mich App 628, 633; 484 NW2d 770 (1992); Alexander v Riccinto, 192 Mich App 65, 70; 481 NW2d 6 (1991). When two statutes or provisions conflict and one is specific to the subject matter while the other is only generally applicable, the specific statute prevails. Gebhardt v O'Rourke, 444 Mich 535, 542-543; 510 NW2d 900 (1994).
We conclude that the trial court erred in holding that § 197 controls on the basis that § 135 applies only where the drain itself is to be extended into a new county. While § 197 applies to situations where land is added to a drainage district, including an intercounty drainage district, it does not include language pertaining to adding lands to the district where the lands to be added are in a county that was not previously part of the intercounty drainage district. Because the language of § 135 specifically addresses such a situation, it controls in the present case. We therefore reverse the order adding lands to the drainage district.
Plaintiff next argues that the determination of the drainage board that the extension of the drain was necessary and conducive to public health, convenience, and welfare is void because the board made that determination before the proposed project specifications were presented.
The procedure for extending an intercounty drain is set out in §§ 122 and 192 of the Drain *565 Code, MCL 280.122, 28.192; MSA 11.1122, 11.1192. Under § 192, after a proper petition setting forth the necessity of the extension is submitted, the members of the drainage board consider the petition:
[I]f such work is then determined to be practicable, they may thereupon appoint a competent surveyor or engineer to make a survey of said drain, and lay out a drainage district according to section 104. After the surveyor or engineer has filed all data with the drainage board, the director of agriculture shall call a meeting as provided in section 122, and thereafter take all steps and perform all acts which are required to be done by said board upon a petition for the location, establishment and construction of drains as provided in sections 121 to 135.
Likewise, § 122 provides:
The board shall consider the petition and evidence offered, and if it is determined that the drain is necessary for the good of the public health, convenience, or welfare, it shall proceed to determine the percentage of the whole cost of construction which each county shall bear, and determine the number of installments in which the drain taxes shall be collected.
As a general rule, the word "may" will not be treated as a word of command unless there is something in the context or subject matter of the act to indicate that it was used in such a sense. Mull v Equitable Life Assurance Society, 444 Mich 508, 519; 510 NW2d 184 (1994). Thus, while the drainage board is permitted to appoint a surveyor or engineer to lay out a drainage district according to the requirements of § 104, MCL 280.104; MSA 11.1104, the drainage board is not required to do *566 so in order to determine the necessity of the project. Similarly, § 122 contemplates the determination of necessity as the initial step in the process of implementing a drain project.
This outcome is consistent with McGregor v Coggins Drain Bd of Determination, 179 Mich App 297; 445 NW2d 196 (1989). While McGregor involved a county drain rather than an intercounty drain, there is no indication in the Drain Code that the Legislature intended a different procedure in each case. In McGregor, this Court held: "The function of the board of determination is to decide whether a proposed project is necessary. Once it has made that determination, the commissioner has the responsibility of finding the best alternative." McGregor, supra at 300.
For intercounty drains, the drainage board functions as the board of determination. MCL 280.122; MSA 11.1122. We hold that the drainage board was not required to have a proposed project before it in order to make a determination of necessity.
Finally, plaintiff contends that the circuit court erred in finding that the proposed intercounty drain project was necessary for the good of the public health, convenience, or welfare. In particular, plaintiff argues that the plan submitted by the engineer is too expensive and too disruptive of the environment and could cause flooding in several area communities.
Decisions of a drainage board regarding the necessity of a drain project are reviewed to determine whether the decision was authorized by law and whether the board's findings of fact are supported by competent, material, and substantive evidence on the whole record. Hitchingham v Washtenaw Co Drain Comm'r, 179 Mich App 154, 160-161; 445 NW2d 487 (1989).
*567 We note that the drainage board did not adopt the proposal submitted by the engineer. Rather, when voting on the necessity of the project, the board agreed that the engineer's proposal would have to be scaled back.
At the hearings conducted by the drainage board, various individuals testified of obstructions in the drain caused by beaver dams, brush undergrowth, bridges, and other obstacles. We find ample evidence in the record to support the drainage board's finding that some action regarding the drain was necessary and conducive to public health, convenience, and welfare.
Affirmed in part and reversed in part.
NOTES
[1] Section 135 requires "a petition signed by 50% of the land owners whose land is traversed by the drain or proposed extended drain, which petition shall state the name or number of the drain, and the lands which it is desired to have added to the drainage district." If § 197 controls, the less stringent petition requirements of § 101, MCL 280.101; MSA 11.1101, should be followed. Section 101 requires only a petition signed by "a number of freeholders in said drainage district whose lands would be liable to an assessment for benefits, equal to 50% of any of the freeholders whose lands would be traversed by the drain or drains applied for or abut on any highway or street along the side of which such drain extends, between a point where such drain enters such highway and the point where it leaves such highway and which lands are within the drainage district."