*In re* GAYTAN ESTATE

Docket No. 205273. Submitted September 1, 1998, at Detroit. Decided
October 27, 1998, at 9:00 A.M.

R. Richard Livorine filed a petition in the Oakland County Probate
Court, seeking an order requiring the estate of John A. Gaytan,
deceased, to pay the petitioner's claim for legal services allegedly
rendered on behalf of John Gaytan before his death. Priscilla
Gaytan, personal representative of the decedent's estate, had
mailed the petitioner a notice of the disallowance of his claim two
days after the expiration of the statutory sixty-three-day period
within which a notice of allowance or disallowance of a claim must
be delivered or mailed. The petitioner asserted that, pursuant to
MCL 700.717(1); MSA 27.5717(1), the respondent's failure to comply
with the time limit resulted in the claim's being deemed allowed by
operation of law. The probate court, Eugene A. Moore, J., agreed
and ordered the estate to pay the claim. The respondent moved for
reconsideration, alleging that the probate court should have con-
ducted a hearing regarding whether good cause to excuse the delay
existed. The probate court granted the motion, conducted a hear-
ing, and ultimately concluded that the petitioner had not engaged
in intentional fraudulent behavior and good cause existed to
excuse the untimeliness of the notice. The probate court then
ordered a hearing regarding the validity of the claim in light of the
disallowance of the claim and the petitioner's continued claim of
entitlement. The probate court judge disqualified himself from
hearing the claim and the hearing was conducted by Joan E. Young,
J., who entered an opinion and order finding the petitioner's claim
to be uncollectible because of the absence of a writing memorial-
izing the terms of any fee agreement or evidence establishing the
petitioner's entitlement to payment under theories of estoppel or
quantum meruit. The Court of Appeals entered an order on August
6, 1996 (Docket No. 196000), dismissing the petitioner's appeal for
lack of jurisdiction. The Supreme Court, in lieu of granting leave to
appeal, reversed and remanded the matter to the Court of Appeals
for plenary consideration. 455 Mich 869 (1997). The petitioner's
only challenge is that the evidence presented at the hearing follow-
ing the granting of the motion for reconsideration did not supply a

factual predicate for the conclusion that good cause existed to excuse untimely notice of disallowance.

The Court of Appeals *held*:

Subsection 717(1) provides that a personal representative's failure to deliver or mail a notice of action on a claim within the statutory period shall be deemed an allowance of the claim. Subsection 717(1) also provides that if, after allowing or disallowing a claim, the personal representative changes a decision concerning the claim, the personal representative shall notify the claimant. Therefore, subsection 717(1) permits a claim that is deemed allowed as a result of the failure to disallow it within the statutory period to be disallowed subsequently by the personal representative. The respondent's untimely notice of disallowance constituted a notice of the respondent's change in decision under subsection 717(1) with respect to the prior allowance of the claim by operation of law. The probate court allowed the petitioner to adjudicate the merits of the claim, as he was statutorily entitled to do in light of his receipt of a notice of disallowance. The petitioner does not challenge the determination following that hearing that the claim should be disallowed.

Affirmed.

DECEDENT'S ESTATES — CLAIMS AGAINST ESTATES — NOTICE OF ACTION ON CLAIMS — CHANGES OF DECISION.

A claim against a decedent's estate that has been deemed allowed as a consequence of the personal representative's failure to disallow it within the statutory period for delivering or mailing notice of action on the claim may be disallowed subsequently by the personal representative, who must notify the claimant of the change in decision; the claimant then has a right to an adjudication of the claim upon a timely request filed in the probate court; an untimely notice of disallowance operates as a proper notice of change of decision by a personal representative with regard to a claim deemed allowed as a result of an untimely notice of disallowance (MCL 700.717[1]; MSA 27.5717[1]).

R. Richard Livorine, in propria persona.

Before: HOLBROOK, JR., P.J., and MARKEY and WHITBECK, JJ.

WHITBECK, J. Petitioner sought to recover attorney fees in the amount of $50,400 from an estate for services he claims to have rendered on behalf of the

decedent, John A. Gaytan, before his death. The probate court ultimately denied petitioner's claim. This Court initially dismissed petitioner's appeal for lack of jurisdiction in an order entered August 6, 1996 (Docket No. 196000). The Michigan Supreme Court, in lieu of granting leave to appeal, reversed and remanded to this Court for plenary consideration. *In re Gaytan Estate*, 455 Mich 869 (1997). We affirm the decision of the probate court, albeit on a ground other than that which it articulated.

### I. BASIC FACTS AND PROCEDURAL HISTORY

The decedent was injured in an automobile accident in March 1987 and, as a consequence of his injuries, was rendered a quadriplegic. Priscilla Gaytan (hereafter respondent) contacted petitioner, a former teacher of the decedent who was also an attorney, and informed him of the accident. Thereafter, the decedent retained petitioner to represent him in a personal injury action. According to petitioner, he and the decedent entered into a "standard contingency fee agreement" providing for petitioner's receipt of twenty-eight percent of all amounts recovered by the decedent. Petitioner eventually secured a settlement on the decedent's behalf. According to respondent, as a result of this settlement petitioner received in excess of $700,000 in contingency fees and twenty-eight percent of the $7,500 monthly payments made to the decedent to provide for his care.[1]

The decedent died in April 1993. Petitioner met with respondent and informed respondent that the

---

[1] Petitioner stopped receiving a part of these latter monthly payments in April 1991.

decedent owed him $50,400 at the time of his death.[2] Subsequently, respondent approached petitioner about representing the estate in probate proceedings. Petitioner informed respondent that he was not a probate attorney and, hence, was unqualified to represent the estate. Petitioner then refused to represent the estate. Instead, he referred respondent to another law firm. Additionally, petitioner prepared an outline of activities respondent needed to undertake in preparation for probating the estate and, on his own admission, expended "some twenty hours" with respect to the commencement of probate proceedings.

In April 1993, respondent filed the necessary paperwork in the Oakland County Probate Court to commence independent probate proceedings and to have herself appointed as the personal representative of the estate. During June and July 1993, after discharging the first firm that she had retained to represent the estate, respondent contacted several attorneys about representing the estate. Eventually, respondent hired David W. Sommerfeld of the Butzel Long law firm. Respondent informed Sommerfeld when she met with him of petitioner's claim that the estate was indebted to petitioner in the amount of $50,400.

---

[2] Respondent indicated that petitioner informed her that he had loaned the decedent the money and the decedent had not repaid the loan at the time of his death. Petitioner stated that the decedent owed him the money as a consequence of attorney fees earned and costs incurred between July 15, 1991, and April 19, 1993, in the provision of professional services

with respect to personal financial administration and planning, development of Lake Sherwood property, liability for easement and nuisance re Lakeview property, allocation of PIP medical benefits to purchase of specialty wheel chairs, allocation of PIP medical benefits to experimental surgery, and miscellaneous personal and family matters.

During August 1993, petitioner and Sommerfeld talked by telephone and corresponded concerning petitioner's claim. Petitioner sent Sommerfeld an invoice for the $50,400 he claimed to be owed, that "detailed," in general terms, the services that petitioner claimed that he provided.

On August 20, 1993, at the request of Sommerfeld, petitioner served respondent with a statement and proof of claim in which he asserted that he was a creditor of the estate and was owed $50,400 by the estate. He also filed a copy of the claim with the probate court and sent a copy to Sommerfeld.

On November 3, 1993, respondent served petitioner with a notice of disallowance of his claim. Petitioner then petitioned the probate court for an order requiring the estate to pay his claim on the ground that his claim was allowed by operation of law pursuant to MCL 700.717(1); MSA 27.5717(1) because the notice of disallowance was not filed within the period required by statute, the notice being untimely by two days. The probate court agreed and ordered the estate to pay petitioner's claim.

Respondent filed a motion for reconsideration on the ground that good cause to excuse the delay existed and that the probate court should have conducted a hearing regarding good cause before ordering payment. The probate court conducted an evidentiary hearing regarding the existence of fraud and, after the close of proofs, found that petitioner had not engaged in "intentional fraudulent behavior." The probate court also found, however, that petitioner had a duty to disclose to respondent that she had a limited time in which to disallow his claim in light of his past professional relationship with respondent, respondent's continued reliance on his advice, and

petitioner's continued advice to respondent during the summer of 1993. The probate court also concluded that a note petitioner attached to the notice of claim could have misled respondent and resulted in respondent's not treating the claim as seriously as she should have treated it.

In light of these findings, the probate court concluded that good cause existed to excuse the untimeliness of the notice of disallowance. The probate court then ordered a hearing regarding the validity of petitioner's claim in light of respondent's disallowance of the claim and petitioner's continued claim of entitlement to payment of the $50,400. Following this hearing, the probate court concluded that the debt claimed by petitioner was uncollectible in the absence of a writing memorializing the terms of any fee agreement and in the absence of evidence establishing .petitioner's entitlement to payment under theories of estoppel or quantum meruit.

### II. STANDARD OF REVIEW

Questions of statutory interpretation and construction are questions of law. *Smeets v Genesee Co Clerk*, 193 Mich App 628, 633; 484 NW2d 770 (1992). Questions of law are reviewed de novo. *Rapistan Corp v Michaels*, 203 Mich App 301, 306; 511 NW2d 918 (1994).

### III. THE STATUTORY SCHEME EMBODIED IN MCL 700.717(1); MSA 27.5717(1)

Petitioner does not challenge the probate court's ruling that the untimeliness of a notice of disallowance can be excused for good cause. Additionally, petitioner does not challenge the probate court's determination that the debt is uncollectible in the

absence of evidence that the debt existed. Instead, petitioner limits his challenge to a claim that the evidence presented at the fraud hearing did not supply a factual predicate for a conclusion that good cause existed to excuse the untimely notice of disallowance.

At the outset, we note that the goal of statutory interpretation is to ascertain and give effect to the intent of the Legislature. *Frankenmuth Mut Ins Co v Marlette Homes, Inc*, 456 Mich 511, 515; 573 NW2d 611 (1998). Judicial construction is precluded where the statutory language is clear and unambiguous. *Id.* If reasonable minds can differ regarding the meaning of the statutory language, judicial construction is appropriate. *Heinz v Chicago Rd Investment Co*, 216 Mich App 289, 295; 549 NW2d 47 (1996). If judicial construction is necessary, every word or phrase generally should be accorded its plain and ordinary meaning. *In re PSC's Determination Regarding Coin-Operated Telephones, No 2*, 204 Mich App 350, 353; 514 NW2d 775 (1994).

Petitioner presented his notice of claim pursuant to MCL 700.710;  MSA 27.5710 and MCL 700.712(1)(a); MSA 27.5712(1)(a). Under these statutes, respondent had sixty-three days after the time for original presentation of the claim has expired or after the appointment of the personal representative, whichever is later, to mail to petitioner a notice of allowance or disallowance of the claim. Respondent mailed her notice of disallowance to petitioner on the sixty-fifth day. MCL 700.717(1); MSA 27.5717(1) provides that a personal representative's failure to deliver or mail a notice of action on the claim to a claimant within this sixty-three-day period shall be deemed an allowance of the claim. Accordingly, as petitioner correctly

asserts, by the clear and unambiguous language of subsection 717(1), *Frankenmuth Mut, supra,* respondent's failure to comply with the time limits for mailing of a notice of action resulted in petitioner's claim's being deemed allowed by operation of law. See also *In re Estate of Roddy,* 784 P2d 841, 843-844 (Colo App, 1989) (applying analogous Colorado statute that deems a claim as being allowed if the personal representative fails to mail a notice of action within sixty days).

MCL 700.717(1); MSA 27.5717(1) also provides, however, that "[i]f, after allowing or disallowing a claim, the personal representative changes a decision concerning the claim, the personal representative shall notify the claimant." As indicated above, subsection 717(1) treats a personal representative's failure to deliver or mail a notice of action within the requisite sixty-three-day period the same as a decision to allow the claim. Thus, we conclude that subsection 717(1) permits a claim that has been deemed allowed as a consequence of the personal representative's failure to disallow it within the statutory period to be disallowed subsequently by the personal representative. See also *In re Estate of Krichau,* 1 Neb App 398, 403-405; 501 NW2d 722 (1992); *In re Estate of Roddy, supra* at 843-844 (allowing a change of decision to a denial of a claim under analogous state statutes that deemed a claim accepted by the personal representative's inaction). Accordingly, respondent's untimely notice of disallowance constituted a notice of respondent's change in decision under subsection 717(1) with respect to the allowance of petitioner's claim. *In re Estate of Krichau, supra* at 403-405; *In re Estate of Roddy, supra* at 843-844.

Therefore, this change in decision triggered petitioner's right to an adjudication of the merits of his claim upon a timely request for such adjudication filed in the probate court. MCL 700.717(1); MSA 27.5717(1); *In re Gordon Estate,* 222 Mich App 148, 151-152; 564 NW2d 497 (1997). The probate court allowed petitioner to adjudicate the merits of his claim, following the decision that good cause existed to excuse the untimely notice of allowance. The probate court then later determined that petitioner's claim should be disallowed in the absence of evidence to establish the existence of any debt owed by the estate to petitioner. Petitioner does not challenge this determination.

We hold that the untimely notice of disallowance operated as a proper notice of change of decision by the personal representative. Thereafter, the probate court allowed petitioner to adjudicate the merits of his claim, as he was entitled to do in light of his receipt of a notice of disallowance. Because petitioner does not challenge the probate court's determination that the claim should be disallowed, petitioner cannot upset the disallowance of his claim by attacking the factual findings that served as the predicate for the probate court's finding of good cause. Indeed, the issue of "good cause" for a change of decision with regard to a claim by a personal representative is wholly irrelevant in light of the language and operation of MCL 700.717(1); MSA 27.5717(1).

Affirmed.