WESTERN CASUALTY AND SURETY GROUP v COLOMA
TOWNSHIP

Docket No. 71927. Submitted February 8, 1984, at Grand Rapids.—
Decided February 5, 1985. Leave to appeal applied for.

John and Ellen LaRatta purchased an allegedly defective house
in Coloma Township from Melvin and Delores Mendenall in
1977. The house was constructed by the Mendenalls and was
allegedly inspected and certified as being in compliance with
the appropriate building codes by Coloma Township, through
its former building inspector, Richard Pearson. The LaRattas
thereafter brought a complaint in the Berrien Circuit Court
alleging in part that Coloma Township and Richard Pearson
acted fraudulently and negligently in failing to properly inspect
the house during its construction and in representing the house
as being in compliance with the building codes. The township
was insured under a policy issued by plaintiff herein, Western
Casualty and Surety Group. Plaintiff undertook a defense to
the LaRatta suit under a reservation of rights agreement and
brought this declaratory judgment action in the Berrien Circuit
Court seeking a determination that the policy did not cover the
claims asserted by the LaRattas and that plaintiff had no duty
to defend that suit. The trial court, Zoe S. Burkholz, J., entered
a judgment for the plaintiff holding that the LaRatta complaint
against Coloma Township and Richard Pearson did not allege
an "occurrence" within the policy definition. An order declar-
ing that the insurance policy provides no coverage to the
township and Pearson for the claim asserted and that plaintiff
is not obligated to defend the township and Pearson in the suit
brought by the LaRattas was also entered. Defendant Coloma
Township appeals as of right from that order. *Held:*

1. The trial court correctly determined that Counts I and II

[1-3] 44 Am Jur 2d, Insurance § 1405 *et seq.*
[2, 3] 44 Am Jur 2d, Insurance § 1409 *et seq.*
[4] 43 Am Jur 2d, Insurance §§ 269, 274, 283 *et seq.*
[5] 43 Am Jur 2d, Insurance §§ 271, 283.
[6, 7] 13 Am Jur 2d, Buildings § 8 *et seq.*
[7] 82 Am Jur 2d, Zoning and Planning § 242.

of the LaRatta complaint allege intentional acts on the part of the insured which cannot be considered accidents within the policy definition of occurrence.

2. Count III of the LaRatta complaint sufficiently alleges that the negligence of the township and Pearson in inspecting the premises resulted in the damages to the LaRattas. A causal nexus between the alleged improper inspection process and the property damage exists. The negligence alleged in Count III, if proven, could have resulted in property damage such that the policy definition of "occurrence" is met. The policy requires only that the alleged negligence of the insured be a cause of the bodily injury or property damage; there is no requirement that the alleged negligence be a direct cause or the sole cause of the injury or property damage. Plaintiff has a duty to defend its insured under these circumstances.

Affirmed in part, reversed in part and remanded for further proceedings.

1. INSURANCE — DUTY TO DEFEND.

The duty of an insurance company to provide a defense to a lawsuit brought against its insured is separate and severable from its duty to indemnify the insured for liability imposed after trial.

2. INSURANCE — DUTY TO DEFEND.

The duty of an insurer to defend its insured in an action by a third party against the insured depends upon the allegations in the complaint of the third party; this duty is not limited to meritorious suits and may extend to actions which are groundless, false, or fraudulent, where the allegations against the insured even arguably come within the policy coverage.

3. INSURANCE — DUTY TO DEFEND.

An insurer has a duty to defend its insured in an action by a third party against the insured, despite theories of liability asserted against the insured which are not covered under the policy, if there are any theories of recovery that fall within the policy; the duty to defend is not limited by the precise language of the pleadings since the insurer must look behind the third party's allegations to analyze whether coverage is possible; doubt in regard to whether the complaint alleges liability of the insurer under the policy must be resolved in the insured's favor.

4. INSURANCE — CONTRACTS — JUDICIAL CONSTRUCTION.

The purpose of insurance is to insure, therefore, the courts should

not construe a policy to defeat coverage unless the language requires it.

5. INSURANCE — CONTRACTS — JUDICIAL CONSTRUCTION.

An insurance contract which is ambiguous is to be construed in favor of the insured.

6. STATUTES — CONSTRUCTION CODE ACT — BUILDING PERMITS.

The State Construction Code Act provides that construction is not permitted without a building permit and that an enforcing agency may issue a permit for home construction only if the plans and specifications comply with state law and other applicable laws and ordinances; a permit may be cancelled in case of a failure or neglect to comply with such enforcing provisions; the enforcing agency shall periodically inspect all construction undertaken pursuant to a building permit issued by it to ensure that such construction is performed in accordance with the requirements of applicable laws and ordinances; the enforcing agency must notify the contractor of any violation and require an explanation as to why construction should not be stopped; if good cause is not shown within 24 hours, the enforcing agent shall post a written order to stop construction on the site (MCL 125.1501 *et seq.;* MSA 5.2949[1] *et seq.).*

7. STATUTES — CONSTRUCTION CODE ACT — CERTIFICATE OF OCCU-PANCY.

The State Construction Code Act provides that a building shall not be used or occupied until a certification of occupancy has been issued by the appropriate enforcing agency; such certificate shall be issued only when the work covered by the building permit has been completed in accordance with the permit and all applicable laws and ordinances (MCL 125.1501 *et seq.;* MSA 5.2949[1] *et seq.).*

*Early, Lennon, Peters & Crocker* (by *Ronald G. Tays),* for plaintiff.

*Hartwig, Crow, Jones & Postelli* (by *F. A. Jones),* for Coloma Township.

Before: M. J. KELLY, P.J., and R. M. MAHER and M. P. REILLY,* JJ.

PER CURIAM. John and Ellen LaRatta purchased

---

* Circuit judge, sitting on the Court of Appeals by assignment.

an allegedly defective house from Melvin and Delores Mendenall in 1977. The house was constructed by the Mendenalls and was allegedly inspected and certified as being in compliance with the appropriate building codes by Coloma Township, through its former building inspector, Richard Pearson. As against the latter two parties, the LaRattas brought a complaint alleging that defendants acted fraudulently and negligently in failing to properly inspect the house during its construction and in representing the house as being in compliance with the building codes.

The township was insured under a policy issued by plaintiff herein, Western Casualty and Surety Group. Plaintiff undertook a defense to the LaRattas' suit under a reservation of rights agreement and brought this declaratory judgment action seeking a determination that the policy did not cover the claims asserted by the LaRattas and that plaintiff had no duty to defend that suit. The trial court found in favor of plaintiff, holding that the LaRattas' complaint against defendants herein did not allege an "occurrence" within the policy definition. A final order was entered June 9, 1983. Defendant township appeals as of right from that order.

The policy issued to the township provides in pertinent part:

"The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of

"A. bodily injury or,

"B. property damage

"to which this insurance applies, caused by an occurrence, and the company shall have the right and duty to defend any suit against the insured seeking damages on account of such bodily injury or property damage,

even if any of the allegations of the suit are groundless, false or fraudulent, * * *

* * *

" 'occurrence' means an accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured;

* * *

" 'property damage' means (1) physical injury to or destruction of tangible property which occurs during the policy period, including the loss of use thereof at any time resulting therefrom, or (2) loss of use of tangible property which has not been physically injured or destroyed provided such loss of use is caused by an occurrence during the policy period."

The duty of an insurance company to provide a defense to a lawsuit brought against its insured is separate and severable from its duty to indemnify the insured for liability imposed after trial. *Reurink Brothers Star Silo, Inc v Maryland Casualty Co*, 131 Mich App 139, 142-143; 345 NW2d 659 (1983). The Court in *The Detroit Edison Co v Michigan Mutual Ins Co*, 102 Mich App 136, 141-142; 301 NW2d 832 (1980), summarized the insurer's duty as follows:

"The duty of the insurer to defend the insured depends upon the allegations in the complaint of the third party in his or her action against the insured. This duty is not limited to meritorious suits and may even extend to actions which are groundless, false, or fraudulent, so long as the allegations against the insured *even arguably* come within the policy coverage. An insurer has a duty to defend, despite theories of liability asserted against any insured which are not covered under the policy, if there are any theories of recovery that fall within the policy. *Dochod v Central Mutual Ins Co*, 81 Mich App 63; 264 NW2d 122 (1978). The duty to defend cannot be limited by the precise language of the pleadings. The insurer has the duty to look behind the third

party's allegations to analyze whether coverage is possible. *Shepard Marine Construction Co v Maryland Casualty Co,* 73 Mich App 62; 250 NW2d 541 (1976). In a case of doubt as to whether or not the complaint against the insured alleges a liability of the insurer under the policy, the doubt must be resolved in the insured's favor. 14 Couch on Insurance 2d, § 51:45, p 538." (Emphasis in original.)

We must now decide whether any of the theories of recovery pled in the LaRattas' complaint are covered by the policy.

Counts I and II of the complaint allege fraud and intentional misrepresentation. These counts allege that defendants made false representations with knowledge of their falsity, or with reckless disregard of their truth or falsity, and with the intent that the LaRattas would rely on and be deceived thereby. This Court agrees with the trial court that Counts I and II allege intentional acts on the part of the insured which cannot be considered accidents within the policy definition of occurrence. *Guerdon Industries, Inc v Fidelity & Casualty Co of New York,* 371 Mich 12, 18-19; 123 NW2d 143 (1963); *Frankenmuth Mutual Ins Co v Kompus,* 135 Mich App 667, 678-679; 354 NW2d 303 (1984).

Count III of the LaRattas' complaint alleges that the township and Mr. Pearson were negligent in failing to properly inspect the premises and supervise construction of the house so as to insure that it complied with the building codes. The trial court interpreted the policy definition of "occurrence" as requiring that the insured's alleged negligent acts caused the property damage. The court concluded that coverage did not exist under the policy for the claims asserted because the alleged negligent inspection was merely an indirect and remote cause of the property damage. The court stated:

"The act of inspection caused no damages to the home, rather that act simply contributed to the LaRattas' decision to purchase, thereby exposing them to the home builder's defective workmanship. Any damage to the home itself is directly attributable to that workmanship and the defects would have existed without the act of inspection. While a trier of fact may later conclude that the allegedly negligent inspection was a proximate cause of the injuries complained of, this court concludes that it was not a cause for which this policy extends coverage."

We do not agree with the trial court's analysis. We begin with the established principle that ambiguities in an insurance contract are to be resolved in favor of the insured. *Farm Bureau Mutual Ins Co of Michigan v Hoag,* 136 Mich App 326; 356 NW2d 630 (1984). Since the purpose of insurance is to insure, the courts should not consture a policy to defeat coverage unless the language requires it. *Arrigo's Fleet Service, Inc v Aetna Life & Casualty Co,* 54 Mich App 482; 221 NW2d 206 (1974), *lv den* 392 Mich 812 (1974).

We find that Count III of the complaint sufficiently alleges that defendants' negligence in inspecting the premises resulted in the damages to the LaRattas. It is alleged that if the inspections had been properly performed, the LaRattas' home would have been constructed in accordance with the appropriate building codes. Under the State Construction Code Act, MCL 125.1501 *et seq.;* MSA 5.2949(1) *et seq.,* an enforcing agency may issue a permit for home construction only if the plans and specifications comply with state law and other applicable laws and ordinances, and a permit may be cancelled in case of a failure or neglect to comply with such enforcing provisions. Construction is not permitted without a building permit. MCL 125.1511; MSA 5.2949(11). An enforcing

agency periodically inspects all construction undertaken pursuant to a building permit issued by it to ensure that the construction is performed in accordance with the requirements of applicable laws and ordinances. The enforcing agency is required to notify the contractor of any violation and to require an explanation as to why the construction should not be stopped. If good cause is not shown within 24 hours, the enforcing agent shall post a written order to stop construction on the site. MCL 125.1512; MSA 5.2949(12). A building shall not be used or occupied until a certification of occupancy has been issued by the appropriate enforcing agency. A certification shall be issued only when the work covered by the building permit has been completed in accordance with the permit and all applicable laws and ordinances. MCL 125.1513; MSA 5.2949(13).

In the present case, the causal nexus between the alleged improper inspection process and the property damage exists because, had the inspection been properly performed, the Mendenalls would have been prevented from continuing to the next phase of construction until corrections had been made. By failing to properly inspect, the defendants could have actively contributed to the eventual property damage to the premises, especially since it was within their control to stop construction and require correction of the defects before further construction was undertaken.

We conclude that the alleged negligence in Count III of the LaRattas' complaint, if proven, could have resulted in property damage such that the policy definition of "occurrence" is met. The policy requires only that the alleged negligence of the insured be a cause of the bodily injury or property damage; there is no requirement that the alleged negligence be a direct cause or the sole

cause of the injury or property damage. We conclude that plaintiff has a duty to defend its insured under these circumstances. The remaining issues raised in the stipulation of facts and issues were not considered by the trial court and need not be addressed by this Court at the present time.

Affirmed in part, reversed in part and remanded for further proceedings.