ALLSTATE INSURANCE COMPANY v ELASSAL

Docket No. 147265. Submitted May 13, 1993, at Detroit. Decided
February 8, 1994, at 9:20 A.M. Leave to appeal sought.

Allstate Insurance Company brought an action in the Wayne
Circuit Court against Lawrence and Amilia Elassal, Richard
Belczynski, and Enterprise Leasing Company of Detroit, seek-
ing a declaration regarding its obligation under a no-fault
policy issued to Riad Elassal, Lawrence's father and Amilia's
husband, that insured the family car. While the car was being
repaired, Amilia rented a car from Enterprise, a self-insurer.
While driving the rented car, Lawrence struck and injured
Belczynski, a pedestrian, who thereafter brought an action
against Enterprise and the Elassals. Allstate's insurance policy
provided that the insurance with respect to a temporary substi-
tute vehicle would be excess insurance over any other collecta-
ble insurance and that Allstate would defend any lawsuit
against the insured for damages payable under the policy.
Enterprise's rental contract provided that it would indemnify
the renter against liability for third-party claims. The court,
Lucile A. Watts, J., granted summary disposition for Enter-
prise, finding that its certificate of self-insurance was not
"other insurance" as provided in Allstate's policy and that
Allstate was the primary insurer responsible for providing
coverage. Allstate appealed.

The Court of Appeals held:

Enterprise's self-insurance, permitted under MCL 257.531;
MSA 9.2231 and MCL 500.3101(4); MSA 24.13101(4), is "other
collectible insurance" under the terms of Allstate's insurance
policy. Under these statutes, self-insurance, as certified by the
Secretary of State, is the functional equivalent of a commercial
insurance policy.

Reversed and remanded.

INSURANCE — NO-FAULT — SELF-INSURANCE — WORDS AND PHRASES
— OTHER COLLECTABLE INSURANCE.

Self-insurance, permitted under the no-fault act and the financial

REFERENCES

Am Jur 2d, Automobile Insurance § 340.

See ALR Index under Automobile Insurance; Self-Insurance.

responsibility provision of the Vehicle Code, is the functional equivalent of a commercial insurance policy (MCL 257.531, 500.3101[4]; MSA 9.2231, 24.13101[4]).

*Kohl, Secrest, Wardle, Lynch, Clark & Hampton* (by *Michael L. Updike* and *Charles E. Griffiths*), for Allstate Insurance Company.

*Vandeveer Garzia* (by *Pamela L. Abbott*), for Enterprise Leasing Company of Detroit.

Before: NEFF, P.J., and MARILYN KELLY and WHITE, JJ.

PER CURIAM. Allstate Insurance Company appeals as of right the circuit court's grant of summary disposition in favor of Enterprise Leasing Company of Detroit. At issue is whether self-insurance, permitted under MCL 257.531; MSA 9.2231 and MCL 500.3101(4); MSA 24.13101(4), is "other collectible insurance" under the terms of Allstate's insurance policy. We hold that it is, and reverse.

I

The underlying facts are not in dispute. On September 9, 1990, Lawrence Elassal, driving a rented car, struck and seriously injured Richard Belczynski, a pedestrian. The car was owned by Enterprise Leasing Company, and had been rented by Elassal's mother, Amilia, to replace a family car under repair.

Elassal and his mother were both covered by an Allstate insurance policy issued to Riad Elassal, Lawrence's father and Amilia's husband. The policy provided coverage for "[a]ny resident of the named insured's household with respect to the owned automobile," any "owned" automobiles, and any "temporary substitute automobile," meaning

any automobile used in place of the owned automobile "when withdrawn from normal use because of its breakdown, repair, servicing, loss or destruction." Regarding Allstate's liability for a temporary substitute vehicle, the policy also provided:

> [T]he insurance with respect to a temporary substitute automobile or a non-owned automobile shall be excess insurance over any other collectible insurance.

The policy provided that Allstate would defend its insureds in any lawsuit against them for damages payable under the policy.

Enterprise's contract with Amilia Elassal provided:

> - BODILY INJURY/PROPERTY DAMAGE RESPONSIBILITY TO THIRD PARTIES: If Renter or other authorized driver is in compliance with all provisions of this agreement, and is between 25 and 70 years old, Owner's financial responsibility extends to Renter and other drivers named on this agreement and approved by Owner for third party claims arising from the use of the car as required by Motor Vehicle Minimum Financial Responsibility Laws of the state where the car is operated, unless this agreement requires the Renter to provide such coverage.

Enterprise's contract did not provide that Enterprise would defend its renters in suits asserting such claims.

Enterprise did not carry insurance on its cars, but had obtained self-insured certification from the Secretary of State pursuant to MCL 257.531; MSA 9.2231 and MCL 500.3101(4); MSA 24.13101(4), by demonstrating that it had sufficient assets to satisfy judgments rendered against it. In addition, Enterprise carried an excess-liability policy from

the Travelers Insurance Companies for judgments in excess of $700,000, with a limit of $9,300,000.

Belczynski sued Enterprise and the Elassals. Under a reservation of rights, Allstate provided the Elassals' defense. Allstate subsequently filed a complaint for declaratory judgment, setting forth several grounds for its claim that its coverage did not apply, and requesting a ruling that Allstate had no obligation to continue to defend the Elassals. Allstate also claimed that, even if its coverage did apply, under the policy's terms it was obliged to provide only "excess insurance over any other collectible insurance," with Enterprise providing primary coverage. Therefore, Allstate asserted, Allstate's policy provided no coverage, and Allstate was obliged neither to indemnify the Elassals nor to continue their defense. Moving for partial summary disposition pursuant to MCR 2.116(C)(10), Allstate requested that the trial court find that Enterprise, through its self-insured status, was the primary insurer, with coverage extending to the base limit of its excess-liability policy. Allstate also requested that Enterprise be required to "assume its duty to defend" the Elassals, and to reimburse Allstate for all costs, expenses, and attorney fees resulting from its defense in the principal action, as well as costs of litigating the duty to defend in this action.

In response, Enterprise argued that its self-insured status did not constitute "other insurance" as set forth in Allstate's policy, that being self-insured was not the equivalent of being insured, and that Allstate therefore remained the primary insurer. Enterprise also denied any obligation to defend.

The trial court found that Enterprise's certificate of self-insurance was not "other insurance" as provided in Allstate's policy. Concluding that All-

state was the primary insurer, responsible for providing coverage for the rental car driven by Lawrence Elassal at the time of the accident as a temporary substitute vehicle, the court denied Allstate's motion for partial summary disposition.

According to Allstate's brief on appeal, the underlying action between Belczynski and the Elassals has been amicably resolved, with Enterprise paying $162,000 and Allstate contributing $30,000 to the settlement. Allstate now seeks reversal of the trial court's ruling in order to allow it to obtain reimbursement from Enterprise for the $30,000, plus costs and attorney fees. Enterprise, in turn, maintains that the trial court's ruling was correct, and that Allstate is obliged to pay the Elassals' defense costs and indemnification up to the policy limit of $50,000.

II

Summary disposition pursuant to MCR 2.116(C)(10) is proper when, except with regard to the amount of damages, there is no genuine issue regarding any material fact, and the moving party is entitled to judgment as a matter of law. *Radtke v Everett,* 442 Mich 368, 374; 501 NW2d 155 (1993). On appeal, we review the trial court's grant or denial of summary disposition de novo. *Adkins v Thomas Solvent Co,* 440 Mich 293, 302; 487 NW2d 715 (1992).

Both the no-fault act, MCL 500.3101 *et seq.*; MSA 24.13101 *et seq.*, and the financial responsibility act, MCL 257.501 *et seq.*; MSA 9.2201 *et seq.*, impose requirements on motor vehicle operators pertaining to liability insurance. The no-fault act provides that owners or registrants of motor vehicles shall maintain "security" for payment of benefits under residual liability insurance, as well as

personal and property protection insurance. MCL 500.3101(1); MSA 24.13101(1). Similarly, the financial responsibility act provides that owners and operators must demonstrate "proof of financial responsibility" for liability purposes, which may take the form of a certificate of liability insurance, a bond, or a certificate of deposit of money or securities. MCL 257.517-257.524; MSA 9.2217-9.2224. Alternatively,

> (a) Any person in whose name more than 25 motor vehicles are registered may qualify as a self-insurer by obtaining a certificate of self-insurance issued by the secretary of state . . . .
> (b) The secretary of state may, in his discretion, upon the application of such a person, issue a certificate of self-insurance when he is satisfied that such person is possessed and will continue to be possessed of ability to pay judgments obtained against such person.
> (c) . . . Failure to pay any judgment within 30 days after such judgment shall have become final shall constitute a reasonable ground for the cancellation of a certificate of self-insurance. [MCL 257.531; MSA 9.2231.]

Correspondingly, under the no-fault act security may be provided by an insurance policy, MCL 500.3101(3); MSA 24.13101(3), or

> by any other method approved by the secretary of state as affording security equivalent to that afforded by a policy of insurance . . . . The person filing the security has all the obligations and rights of an insurer under this chapter. When the context permits, "insurer" as used in this chapter, includes any person filing the security as provided in this section. [MCL 500.3101(4); MSA 24.13101(4).]

The minimum coverage of such liability insur-

ance is $20,000 for injury or death to one person, $40,000 for injury or death to more than one person in the same accident, and $10,000 for injury to or destruction of others' property. MCL 257.514; MSA 9.2214, MCL 257.520(b)(2); MSA 9.2220(b)(2), MCL 500.3009(1); MSA 24.13009(1), MCL 500.3131; MSA 24.13131.

III

In light of the above-cited provisions, we cannot agree with Enterprise that a party that is self-insured under the no-fault and financial responsibility acts is not insured within the common meaning of "insurance," and is, in fact, "the exact opposite" of having insurance. The opposite of having insurance is not being self-insured, but uninsured. The no-fault act explicitly treats a self-insurer as an insurer, with "all the obligations and rights of an insurer"; we believe that the financial responsibility act implicitly does so as well. Thus, under these acts, self-insurance, as certified by the Secretary of State, is the functional equivalent of a commercial insurance policy, with the purpose of either form being to compensate victims properly. See *McClain v Begley*, 465 NW2d 680, 682 (Minn, 1991).[1] We note that the recent case of *State Farm Mutual Automobile Ins Co v Snappy Car Rental, Inc*, 196 Mich App 143; 492 NW2d 500 (1992), treated a self-insured rental agency as an insurer under the acts.[2]

[1] See also *Consolidated Enterprises, Inc v Schwindt*, 172 Ariz 35; 833 P2d 706 (1992). But see *Hearty v Harris*, 574 So 2d 1234, 1237-1238 (La, 1991).

[2] We note that the instant case involves no battle of excess-coverage provisions. Enterprise does not claim that its rental contract makes Allstate's coverage primary. Rather, it argues only that Allstate's contract refers to "other collectible insurance" and self-insurance is not insurance. The parties agree that the facts of this case are distinguishable from those of *State Farm Mutual, supra.*

Nor does Enterprise's appeal to the common understanding of insurance defeat Allstate's argument that Enterprise provided "other collectible insurance." The term insurance can be defined, as Enterprise does, as a contract between two parties for indemnification. Black's Law Dictionary (4th ed), p 943. However, definitions of insurance also include: "coverage by contract whereby one party undertakes to indemnify or guarantee another against loss by a specified contingency or peril," *Webster's Seventh New Collegiate Dictionary* (1970), p 439 (definition 2b), see also *Random House Webster's College Dictionary* (1991), p 699 (definition 2); "the sum for which something is insured," *Webster's Seventh New Collegiate Dictionary, supra,* p 439 (definition 2c); and "any means of guaranteeing against loss or harm," *Random House Webster's, supra,* p 699 (definition 6). In this case, Enterprise was certified as self-insured, meaning, for purposes of the no-fault and financial responsibility acts, that it had indemnified itself to satisfy judgments against it.

Moreover, by the terms of its rental contract, Enterprise extended its financial responsibility for liability coverage to its renters, barring agreement to the contrary. Those terms clearly constitute a contractual promise to indemnify the renter against liability for third-party claims: "coverage by contract whereby one party undertakes to indemnify or guarantee another against loss by a specified contingency or peril." *Webster's Seventh New Collegiate Dictionary, supra,* p 439 (definition 2b).

We conclude that because self-insurance is the functional equivalent of insurance under the no-fault and financial responsibility acts, Enterprise's agreement to indemnify its renters against third-party claims was "other collectible insurance"

within the meaning of Allstate's policy terms. Allstate was thus entitled to summary disposition with regard to this issue, and the court's ruling to the contrary was error.

We address here only the question whether the trial court erred in concluding that Enterprise's self-insured status was not "other collectible insurance" under the Allstate policy. We do not address the effect of this decision on the ultimate issues in the case. These questions should be presented to the trial court. We do note, however, that it does not necessarily follow that Allstate is entitled to all the relief requested in its complaint.[3]

Reversed and remand for further proceedings. We do not retain jurisdiction.

---

[3] The duty to defend is separate from the duty to indemnify for liability. *Western Casualty & Surety Group v Coloma Twp,* 140 Mich App 516, 520; 364 NW2d 367 (1985).