HEINZ v CHICAGO ROAD INVESTMENT COMPANY

Docket Nos. 169059, 169075. Submitted November 14, 1995, at Detroit. Decided April 12, 1996, at 9:05 A.M.

Robert F. and Dawne M. Heinz brought an action in the Oakland Circuit Court against The Chicago Road Investment Company, seeking damages arising out of Robert Heinz' slip and fall during the course of his employment at a building owned by the defendant. The jury returned a verdict for the plaintiffs allocating damages for lost wages, for medical expenses, general damages, and loss of consortium and finding Robert Heinz' comparative negligence to be fifty percent. The defendant moved to offset against the jury verdict pursuant to MCL 600.6303; MSA 27A.6303 the amount in medical expenses and lost wages that Robert Heinz had received as worker's compensation benefits and the amount of the lump-sum worker's compensation redemption that he had received as a result of the slip and fall. The plaintiffs raised a number of objections concerning the propriety of such offsets. The court, Hilda R. Gage, J., ultimately offset against the jury verdict the benefits paid for medical expenses and lost wages, reduced the resulting amount by the degree of comparative negligence, and entered a judgment. The court refused to offset against the verdict the redemption award on the basis that it had not been apportioned relative to the type of losses and expenses that were being redeemed. The plaintiffs and the defendant appealed separately. The appeals were consolidated.

The Court of Appeals *held:*

The court properly reduced the jury verdict by the amount of the worker's compensation benefits that had been paid for lost wages and medical expenses, but erred in refusing to reduce the remaining portion of the jury verdict for lost wages and medical expenses by the amount of the worker's compensation redemption.

1. MCL 600.6303; MSA 27A.6303 abrogated the common-law collateral-source rule in personal injury actions that seek recovery of medical expenses, loss of earnings or earning capacity, or other economic losses where there is evidence that the expense or loss was paid or is payable from a collateral source. Subsection 4 of § 6303 defines collateral source as including benefits received or receivable as worker's compensation benefits but excludes from

the definition of collateral source benefits paid by an entity that is entitled by law to a lien against the proceeds of a recovery in a civil action for damages.

2. Although a worker's compensation provider is entitled by law to a lien against the recovery in a civil action that includes damages for losses and expenses for which worker's compensation benefits were paid, § 6303 is not thereby rendered contradictory and ambiguous, because, as the trial court concluded, the language can be construed in a manner that does not render the inclusion of worker's compensation benefits within the definition of collateral sources nugatory. Worker's compensation benefits are collateral sources within the meaning of the statute where, as here, the statutory right to a lien has been waived by the worker's compensation provider, but are not collateral sources where the statutory lien remains in effect.

3. The reduction of the jury verdict pursuant to § 6303 did not constitute an unconstitutional taking of the plaintiffs' property without just compensation, because the plaintiffs failed to prove that they had a cognizable interest in private property with respect to the jury verdict.

4. The reduction of the jury verdict pursuant to § 6303 did not deny the plaintiffs their state constitutional right to a jury trial with respect to the issue of damages, because § 6303 did not alter the jury's assessment of damages, but rather it merely recognized that the plaintiffs had already been compensated for a portion of those from a collateral source: the worker's compensation benefits.

5. Because the plaintiffs failed to prove that they had a protectable property right in the jury verdict as rendered, they failed to show that the reduction of the jury verdict pursuant to § 6303 deprived them of their property without due process of law.

6. Because there is a rational basis for the abrogation of the common-law collateral-source rule in actions for personal injury— that being the prevention of a double recovery for a personal injury—the decision of the Legislature to limit the effect of the legislation to personal injury cases did not abridge the plaintiffs' constitutional right of equal protection of the laws.

7. The application of the provisions of § 6303 was not precluded by the failure of the defendant to insist on the use of the jury verdict form found in MCL 600.6305; MSA 27A.6305. The verdict form used by the court was sufficient to enable it to make the proper reduction under § 6303.

8. Because worker's compensation is insurance that is required by law irrespective of whether the coverage results from a self-insurance plan or from a policy purchased from an insurance com-

pany, the insurance premium reduction provision of subsection 2 of § 6303 was not applicable.

9. The court erred in refusing to reduce the portion of the jury verdict for lost wages and medical expenses remaining after the reductions for worker's compensation benefits by the amount of the worker's compensation redemption. The fact that the redemption agreement did not specifically indicate what losses and expenses were being redeemed did not preclude reduction of the remaining jury verdict for lost wages and medical expenses by the amount of the worker's compensation redemption. Such a reduction is consistent with the language of § 6303 and better serves the statutory purpose of preventing double recovery.

10. The trial court did not err in refusing to grant costs and sanctions pursuant to MCR 2.403(O) and 2405(D)(1).

Affirmed in part, reversed in part, and remanded for entry of amended judgment.

NEFF, J., concurring in part and dissenting in part, stated that the jury verdict should be affirmed, because the court correctly concluded that, while the specific worker's compensation benefits could be offset against the corresponding allocations in the jury verdict, the nonspecific redemption award should not be used to offset what essentially was a verdict for lost wages because there was the possibility that the redemption award included amounts for medical expenses, which had already been almost completely offset by the reduction for the specific benefits that had been paid.

1. DAMAGES — JURY VERDICTS — COLLATERAL SOURCES — WORKER'S COMPENSATION — LIENS.

The statute that abrogated the common-law collateral-source rule in personal injury actions is not contradictory or ambiguous with regard to its application to worker's compensation benefits; worker's compensation benefits are collateral sources for the purpose of the statute where the statutory right to a lien with respect to such benefits has been waived by the provider of those benefits (MCL 600.6303; MSA 27A.6303).

2. DAMAGES — JURY VERDICTS — COLLATERAL SOURCES — CONSTITUTIONAL LAW.

The reduction of a jury verdict for damage pursuant to the statute that abrogated the common-law collateral-source rule in personal injury actions does not violate a successful plaintiff's constitutional right against the taking of property without just compensation, the right to a trial concerning the issue of damages, or the rights of due process and equal protection of the law (US Const, Ams V, XIV; Const 1963, art 1, §§ 2, 14, art 10, § 2; MCL 600.6303; MSA 27A.6303).

3. Damages — Jury Verdicts — Collateral Sources — Worker's Compensa-
   tion — Redemptions.

   A jury verdict that includes separate allocations for lost wages and
   medical expenses may be reduced pursuant to the statute that
   abrogated the common-law collateral-source rule in personal injury
   actions by the amount of a worker's compensation redemption
   even if the redemption agreement does not indicate the type of loss
   or expenses that is being redeemed (MCL 600.6303; MSA 27A.6303).

*Turner and Turner, P.C.* (by *Matthew L. Turner*),
for the plaintiffs.

*O'Leary, O'Leary, Jacobs, Mattson & Perry* (by
*John P. Jacobs*), for the defendant.

Before: Gribbs, P.J., and Neff and J. J. McDonald,*
JJ.

Per Curiam. In Docket No. 169059, plaintiffs appeal
from the judgment of the circuit court awarding plain-
tiffs $70,034.77. The amount awarded represents the
jury's verdict of $198,000, minus worker's compensa-
tion benefits received by Mr. Heinz, and then reduced
by fifty percent as a result of plaintiff Robert Heinz'
comparative negligence. Plaintiffs contend that the
trial court erred in reducing the jury's verdict by the
amount of the worker's compensation benefits under
MCL 600.6303(1); MSA 27A.6303(1). We disagree and
thus affirm the trial court's decision to reduce the
jury's verdict by the amount of the specific worker's
compensation benefits.

In Docket No. 169075, defendant appeals as of right
from the same order of the circuit court, claiming
that the court erred in failing to reduce plaintiffs' jury
award by an additional $80,227.25, the amount plain-
tiffs received as a redemption of other worker's com-

---

* Circuit judge, sitting on the Court of Appeals by assignment.

pensation claims. We agree, reverse this part of the court's ruling, and remand.

I

Mr. Heinz was injured in 1988 in a slip and fall accident as he was leaving his employer's building. As a result of his injuries, he received worker's compensation benefits in the amount of $19,824.25 for medical expenses and $38,106.21 for lost wages. In addition, for the sum of $80,227.25, Mr. Heinz redeemed all other worker's compensation claims arising out of the 1988 slip and fall. As part of the redemption, Mr. Heinz' worker's compensation provider waived any lien on future judgments obtained by plaintiffs for the injuries sustained by Mr. Heinz.

After receiving the worker's compensation benefits, plaintiffs sued defendant, the owner of the building, for negligence. Following trial, the jury returned the verdict in favor of plaintiffs. The jury's award was itemized in the following manner: $128,000 in lost wages, $20,000 for medical expenses, $40,000 in general damages, and $10,000 for loss of consortium.

Before the judgment was entered on the jury's verdict, defendant, pursuant to MCL 600.6303; MSA 27A.6303, sought to have Mr. Heinz' award reduced by the amount of worker's compensation benefits he had received.

Ultimately, the trial court determined that the amount of worker's compensation benefits Mr. Heinz received for medical expenses and lost wages could be offset against the jury's award.[1] The court also

---

[1] Neither party disputes the trial court's method of setting off these amounts from the jury's award before reducing plaintiffs' jury award by Mr. Heinz' comparative negligence. See MCL 600.6306; MSA 27A.6306.

held, however, that because it could not be determined how the $80,227.25 was apportioned, if at all, i.e., what portions compensated Mr. Heinz for future and past medical expenses, future and past wage loss, or other expenses or losses, that amount could not be offset against plaintiffs' recovery.

It is from this order that plaintiffs and defendant appeal as of right.

II

In Docket No. 169059, plaintiffs challenge the validity of MCL 600.6303; MSA 27A.6303, which abrogates the common-law collateral-source rule. Plaintiffs base their challenge on a number of grounds, none of which we find to be persuasive.

A

Before MCL 600.6303; MSA 27A.6303 was enacted in 1986, the common-law collateral-source rule provided that compensation from a source other than another tortfeasor, for example, worker's compensation benefits, did not operate to reduce the damages recoverable from the wrongdoer. See *McMiddleton v Otis Elevator Co*, 139 Mich App 418, 429; 362 NW2d 812 (1984).

MCL 600.6303(1); MSA 27A.6303(1), however, provides:

> In a personal injury action in which the plaintiff seeks to recover for the expense of medical care, rehabilitation services, loss of earnings, loss of earning capacity, or other economic loss, evidence to establish that the expense or loss was paid or is payable, in whole or in part, by a collateral source shall be admissible to the court in which the action was brought after a verdict for the plaintiff and before a judgment is entered on the verdict.

B

Plaintiffs first argue that the statute is contradictory, ambiguous, and in derogation of common law and, thus, that the lower court erred in failing to construe strictly the statute to provide that worker's compensation benefits are not to be offset from a jury's verdict. We disagree.

1

Statutory interpretation is a legal issue, which this Court reviews de novo. See *Smeets v Genesee Co Clerk*, 193 Mich App 628, 633; 484 NW2d 770 (1992).

The primary goal of judicial interpretation of statutes is to ascertain and give effect to the intent of the Legislature. *People v Stanaway*, 446 Mich 643, 658; 521 NW2d 557 (1994). If the plain and ordinary meaning of a statute's language is clear, judicial construction is normally neither necessary nor permitted. *Lorencz v Ford Motor Co*, 439 Mich 370, 376; 483 NW2d 844 (1992). If reasonable minds can differ concerning the meaning of a statute, however, judicial construction is appropriate. *Folands Jewelry Brokers, Inc v City of Warren*, 210 Mich App 304, 307; 532 NW2d 920 (1995).

One rule of statutory interpretation provides that well-settled common-law principles are not to be abolished by implication, and when an ambiguous statute contravenes the common law, it must be interpreted so that it makes the least change in the common law. *Marquis v Hartford Accident & Indemnity (After Remand)*, 444 Mich 638, 652-653; 513 NW2d 799 (1994). At the same time, however, this Court is instructed to avoid any construction that would render a statute, or any part of it, surplusage or nuga-

tory. *Altman v Meridian Twp*, 439 Mich 623, 635; 487 NW2d 155 (1992).

2

Plaintiffs argue that the definition of collateral source, found in MCL 600.6303(4); MSA 27A.6303(4), is contradictory and ambiguous. That subsection provides:

> As used in this section, "collateral source" means benefits received or receivable from . . . worker's compensation benefits . . . . Collateral source does not include . . . benefits paid by a person, partnership, association, corporation, or other legal entity entitled by law to a lien against the proceeds of a recovery by a plaintiff in a civil action for damages

Because the worker's compensation provider is entitled to such a lien, plaintiffs argue that this subsection is contradictory because the first sentence defines the term collateral source to include worker's compensation benefits, while the second sentence, by referencing a lien, excludes worker's compensation benefits from the definition of collateral source. Thus, plaintiffs would have us hold that worker's compensation is not included as a collateral source, because any other interpretation would abolish a common-law principle by implication.

We disagree because, as the trial court found, this statute can be construed so that none of it is rendered nugatory. We find that the second sentence of subsection 4 is an exception to the first: worker's compensation is a collateral source so that a plaintiff's recovery, and a defendant's responsibility to pay damages, are diminished unless there is a valid lien with respect to the plaintiff's recovery. In the latter

case, the plaintiff is entitled to, and the defendant must pay, the full amount of the jury verdict because the plaintiff's recovery is subject to the valid lien. In either circumstance, the plaintiff's recovery would be identical, and double recovery would be avoided.

To construe the statute in the manner argued by plaintiffs would require reading out of the statute the requirement that worker's compensation benefits are considered a collateral source. In other words, plaintiffs' proposed construction is contrary to the express terms of the statute and would not be favored even if those statutory terms are in conflict with the common law. See *Barker Bros Construction v Bureau of Safety & Regulation*, 212 Mich App 132, 140; 536 NW2d 845 (1995).

C

Plaintiffs also challenge the statute on a number of constitutional grounds. Whether a statute is constitutional is a question of law, which this Court reviews de novo. *In re Lafayette Towers*, 200 Mich App 269, 273; 503 NW2d 740 (1993).

1

Plaintiffs first allege that the statute effects an unconstitutional taking of property without just compensation. US Const, Ams V, XIV; Const 1963, art 10, § 2. We disagree.

In order to succeed in this argument, plaintiffs must establish that they enjoyed some cognizable interest in some affected item of private property. *Michigan Soft Drink Ass'n v Dep't of Treasury*, 206 Mich App 392, 402; 522 NW2d 643 (1994). Such property is everything over which plaintiffs have exclusive

control or dominion. *Charles Murphy, MD, PC v Detroit*, 201 Mich App 54, 56; 506 NW2d 5 (1993).

Plaintiffs have failed to prove a cognizable interest in this case. Initially, plaintiffs do not argue that their cause of action against defendant created a protectable property right; rather, they argue that once the jury rendered its verdict, a protectable property right arose. A jury verdict, however, does not become enforceable until the court enters a judgment on that verdict. Plaintiffs' argument fails to comprehend the distinction between a judgment, which finally disposes of the claim between parties, and the jury's verdict, which is merely the basis for the judgment. See 3 Martin, Dean & Webster, Michigan Court Rules Practice, p 364. Thus, because plaintiffs do not enjoy complete dominion and control over the jury verdict, they have failed to prove that a cognizable property right was affected.

Next, plaintiffs argue that when they negotiated the redemption and waiver of lien from their worker's compensation provider, they, in effect, purchased the lien. Thus, according to plaintiffs, they had a protectable property right in the lien.

This argument is also unpersuasive. Plaintiffs, as the parties claiming the existence of this property right, had the burden of producing evidence relevant to the issue. See *Brown v Beckwith Evans Co*, 192 Mich App 158, 167; 480 NW2d 311 (1991). Plaintiffs, however, failed to produce any evidence to substantiate their claim, such as the redemption agreement indicating that plaintiffs purchased the lien. Thus, plaintiffs have also failed to demonstrate that they had a protectable property right in the lien. Their claim that the statute effects an unconstitutional tak-

ing of property without compensation therefore must fail.

2

Plaintiffs next argue that by arbitrarily reducing the amount of the jury verdict, the statute denied them their state right to a trial by jury with respect to the issue of damages. Const 1963, art 1, § 14. Plaintiffs support their argument by quoting the following passage from *Leary v Fisher*, 248 Mich 574, 578; 227 NW 767 (1929):

> Plaintiff is entitled to a right of trial by jury, and one of the necessary incidents of the trial of cases of this character by jury is that the jury shall fix the amount of damages. Their verdict should not be interfered with unless plainly excessive. If the verdict was excessive, the trial court had a right to grant a new trial. This court has recognized that the trial court has a wide discretion in granting or refusing new trials.

The error in plaintiffs' argument is the application of *Leary* to the facts of this case. In *Leary*, the jury awarded the plaintiff $15,000 in damages, but the trial court reduced the amount of the award to $5,000. In other words, the trial court altered the jury's assessment of the damages.

Here, however, the statute does not alter the jury's assessment of the damages. The jury award specified that Mr. Heinz suffered $128,000 in lost wages and $20,000 in medical expenses. The reduction of the award recognizing the collateral-source benefits did not alter this determination; rather, it merely recognized that plaintiffs were already compensated, in part, for these damages. In other words, plaintiffs received the full amount of the damages that the jury

determined proper, the source of payment of that amount merely was split between defendant and the worker's compensation provider.

Accordingly, we conclude that plaintiffs' allegation that they were denied their right to a jury trial is without merit.

3

Next, plaintiffs claim that the statute deprives them of their property without due process of law. However, because we have already determined that plaintiffs have failed to prove that they have a protectable property right, see *Detroit v Walker*, 445 Mich 682, 699; 520 NW2d 135 (1994), this argument is without merit.

4

Plaintiffs' final constitutional argument is that in creating a distinction between personal injury plaintiffs and all other tort claimants, the statute creates an unjustifiable class distinction in violation of the federal and state Equal Protection Clauses. US Const, Am XIV; Const 1963, art 1, § 2.

Because MCL 600.6303; MSA 27A.6303 is a statute relating to economic matters, the constitutional standard of review is the rational basis test. See *Bissell v Kommareddi*, 202 Mich App 578; 509 NW2d 542 (1993).

Plaintiffs argue that the statute fails even under a rational basis test because the justification for enacting tort reform, an alleged crisis in the insurance industry, is a mere fantasy concocted by the insurance industry to ensure greater profits. Thus, according to plaintiffs, any classification to further the pre-

sumed legislative intent of assisting the insurance industry in order to make insurance more affordable must fail. Plaintiffs acknowledge, however, that no statutory history detailing the exact intent of the Legislature in enacting 1986 PA 178 exists. Plaintiffs cite authority from legal scholars and case law from other states in support of their argument that Michigan enacted its tort reform legislation to combat an insurance industry crisis.

We find plaintiffs' argument overly narrow. We conclude that it is just as reasonable to presume from the enactment of MCL 600.6303; MSA 27A.6303 that the Legislature's intent was to promote fairness, i.e., to prevent personal injury plaintiffs from being compensated twice for the same injury. See, e.g., *Imlay v Lake Crystal*, 453 NW2d 326 (Minn, 1990). We conclude that this is a legitimate governmental objective.

Next, we conclude that the class distinction created by the statute rationally relates to this proper governmental purpose. Although the classification does not include all tort victims, that is not the constitutional requirement. Under the rational basis test, the Legislature is not required to enact laws affecting all equally, but may " 'direct its legislation against what it deems an existing evil without covering the whole field of possible abuses.' " *Michigan AFL-CIO v Michigan Employment Relations Comm*, 212 Mich App 472, 483; 538 NW2d 433 (1995), quoting from *Metropolitan Funeral System Ass'n v Comm'r of Ins*, 331 Mich 185, 194; 49 NW2d 131 (1951). This is what the Legislature has done with the statute abrogating the common-law collateral-source rule, and we will not upset this legislative judgment.

Accordingly, we find plaintiffs' equal protection argument lacking in persuasion as well.

D

Next, plaintiffs argue that because defendant did not insist on using the jury verdict form set forth in MCL 600.6305; MSA 27A.6305, it is estopped from relying on MCL 600.6303; MSA 27A.6303, because the two statutes are in pari materia. We disagree.

Plaintiffs have cited no authority, and we know of none, that compels the result they request. Rather, examining the jury verdict form used in this case, we are convinced that it sufficiently itemized plaintiffs' damages to enable the court to reduce the jury's award by those amounts for which plaintiffs had already been compensated. Accordingly, although it would have been beneficial to use the proper jury verdict form, we find no error in the jury verdict form used.

E

Finally, plaintiffs argue that the trial court erred in failing to credit plaintiffs the amount of the worker's compensation premiums paid by Mr. Heinz' employer. We disagree.

MCL 600.6303(2); MSA 27A.6303(2) provides that the amount of a collateral-source setoff will be reduced by insurance premiums, "[e]xcept for premiums on insurance which is required by law." Plaintiffs argue that because an employer may self-insure against worker's compensation claims under MCL 418.611(1)(a); MSA 17.237(611)(1)(a), worker's compensation is not insurance "required by law."

Plaintiffs' argument, however, fails to cite the initial language of MCL 418.611(1); MSA 17.237(611)(1), which provides that "[e]ach employer under this act . . . shall secure the payment of compensation under this act by 1 of the following methods." Thus, whether an employer pays a premium or reserves funds, the same concept is involved: protection against risk that is required by law. This Court has previously refused to distinguish between self-insurance and purchasing insurance from a worker's compensation insurer, and we refrain from doing so now. See *Wallace v Consolidated Freightways*, 199 Mich App 141, 145; 500 NW2d 752 (1993).

Further, this Court in *Allstate Ins Co v Elassal*, 203 Mich App 548, 554; 512 NW2d 856 (1994), determined that because the no-fault and financial responsibility acts do not distinguish between a self-insurer and commercial insurance, self-insurance was essentially the same as a commercial insurance policy for the purposes of those acts. Because the Worker's Disability Compensation Act also does not distinguish between the two types of insurers, we reach the same conclusion as did the Court in *Allstate*, i.e. self-insurance in the worker's compensation arena is the functional equivalent of purchasing a commercial insurance policy. Therefore, because an employer must by law obtain insurance, plaintiffs' argument must fail.

In Docket No. 169059 the trial court's judgment and orders are affirmed.

III

A

Defendant's main argument in Docket No. 169075 is that the trial court erred in failing to deduct from the

jury verdict the amount plaintiffs received as a redemption of their future worker's compensation claims. We agree.

The trial court determined that it could not offset the $80,227.25 redemption amount because the redemption agreement between plaintiffs and their worker's compensation benefits provider did not itemize the reasons for the payment. Thus, according to the trial court, it would have to engage in utter speculation in order to offset that amount against the amounts awarded by the jury. We disagree with this analysis.

The primary goal of judicial interpretation of statutes is to ascertain and give effect to the intent of the Legislature, *People v Stanaway*, 446 Mich 643, 658; 521 NW2d 557 (1994).

MCL 600.6303(1); MSA 27A.6303(1) provides in part:

> [I]f the court determines that all or part of the plaintiff's expense or loss has been paid or is payable by a collateral source, the court shall reduce that portion of the judgment which represents damages paid or payable by a collateral source by an amount equal to the sum determined pursuant to subsection (2). *This reduction shall not exceed the amount of the judgment for economic loss or that portion of the verdict which represents damages paid or payable by a collateral source.* [Emphasis added.]

Subsection 4 of § 6303, in pertinent part, defines collateral source as follows:

> As used in this section, "collateral source" means benefits received or receivable from an insurance policy; benefits payable pursuant to a contract with a health care corporation, dental care corporation, or health maintenance organi-

zation; employee benefits; social security benefits; worker's
compensation benefits; or medicare benefits.

Regardless of the amount of the collateral source
benefits "paid or payable," the statute in § 6303(1)
places two outer limits on the reduction of the jury
verdict: first, the reduction may not exceed the
economic-loss portion of the judgment; second, the
reduction may not exceed the portions of the verdict
corresponding to the type of damages the collateral
source has compensated or will compensate.

In the present case, the jury awarded damages in
the areas of lost wages ($128,000), medical expenses
($20,000), "general damages" ($40,000), and loss of
consortium ($10,000). The second limitation on ver-
dict reduction requires that the reduction not exceed
the portion of the damages awarded to compensate
for the same "type" of damage as the worker's com-
pensation benefits covered. Worker's compensation
benefits address medical expenses and wage loss, but
not "general damages" or loss of consortium suffered
when the injured party is still alive. See, e.g., MCL
418.301, 418.401; MSA 17.237(301), 17.237(401). There-
fore, the statutorily mandated reduction may not
exceed the total award of medical and lost-wage dam-
ages ($20,000 + $128,000 = $148,000).

The trial court was concerned with partitioning the
reduction between reduction of the medical damages
and reduction of lost-wage damages. However,
because both types of damages are "paid or payable"
by worker's compensation, there does not appear to
be any statutory requirement for this more detailed
breakdown of the reduction. It is adequate to indicate
that worker's compensation benefits, unless specifi-
cally targeted for medical expenses or lost wages (in

which case the designation should be respected), will be offset against the verdict, but not in an amount greater than the total award of medical and lost-wage damages ($148,000 in the present case).

Here, because the worker's compensation redemption was not earmarked specifically, it should simply be offset against the total verdict for lost wages and medical costs remaining after the reduction by the earlier, targeted worker's compensation payments ($19,824.25 for past medical expenses and $38,106.21 for past wage loss). After the reduction of the jury verdict by those sums, the combined medical and wage-loss damages were $90,069.54 ($175.75 + $89,893.79). The redemption amount was $80,227.25. Upon reduction by the amount of the redemption, plaintiffs are left with $9,842.29 of recovery representing medical expenses and lost wages not covered by worker's compensation payments.

This result is consistent with the statutory language and better serves the statutory purpose of preventing "double recovery" than does the trial court's refusal to reduce any portion of the verdict by the $80,227.25 worker's compensation redemption. As a result of the error by the trial court, the plaintiffs have been paid twice for one set of injuries.

Holding that § 6303 will not apply to lump-sum redemptions, which are a standard practice in the settlement of worker's compensation claims, would lead to frustration of the statute's purpose in a large number of cases. Neither the worker's compensation carrier nor a plaintiff has any reason to apportion the redemption, and a potential defendant has no control over the redemption process. Thus, because lump-sum redemptions would continue to be common prac-

tice, frustration of the Legislature's intent in enacting § 6303 will continue if the trial court's reasoning is allowed to stand.

B

Defendant's remaining issue is that the trial court erred in failing to grant costs and sanctions pursuant to MCR 2.403(O) and 2.405(D)(1). Defendant acknowledges, however, that this issue was considered and decided adversely to its position in *Warden v Fenton Lanes, Inc*, 197 Mich App 618; 495 NW2d 849 (1992). We affirm that aspect of the trial court's judgment.

In Docket No. 169075, the trial court's judgment is reversed in part, and we remand for entry of judgment for plaintiffs in the amount of $29,921.15, representing the total of the $9,842.29 in medical expenses and lost wages not covered by worker's compensation payments, the $40,000 in general damages, and the $10,000 in loss of consortium as reduced by the degree of comparative negligence. We do not retain jurisdiction.

In Docket No. 169059, we affirm.

Neff, J. *(concurring in part and dissenting in part)*. I respectfully dissent from the holding of part IIIA of the majority opinion. I concur in all other respects.

MCL 600.6303(1); MSA 27A.6303(1) provides that the trial court is to reduce a plaintiff's recovery by an amount determined pursuant to subsection 2. MCL 600.6303(2); MSA 27A.6303(2) provides:

> The court shall determine the amount of the plaintiff's expense or loss which has been paid or is payable by a collateral source.

Thus, in order for a court to perform its task under subsection 2, it must know the type of expenses and losses for which a payment from a collateral source was made to a plaintiff. In other words, the court could not reduce a plaintiff's jury award by $5,000 received from a worker's compensation provider for past medical expenses, if the jury award did not provide a recovery for past medical expenses.

Here, Mr. Heinz' redemption agreement did not account for any allocation of the payment. Defendant argues that because the money came from a wage-loss reserve, it is clear that the redemption amount is lost wages. Defendant, however, cites no authority, and I know of none, that holds this Court bound by the accounting practices of a worker's compensation provider. To the contrary, it is probable that the redemption included at least medical expenses, and most likely other expenses and losses, in addition to wage loss. However, on the record presented below there is no way to determine what the redemption payment covered or in what proportion.

I recognize that by refusing to allow the $80,227.25 redemption amount to be offset from plaintiffs' recovery, the possibility exists that plaintiffs will be twice paid for some of the same expenses or injuries. I also recognize defendant's seemingly valid public policy arguments in favor of creating a rule disallowing double recovery under these circumstance. However, we clearly do not have the authority to create such a rule, a constraint the majority overlooks. We are not permitted to pass on the wisdom or fairness of a leg-

islative enactment or, in essence, to enact correcting legislation to rectify a perceived inequity; our task is simply to apply the law as written.[1] See *Allstate Ins Co v Dep't of Ins*, 195 Mich App 538, 547; 491 NW2d 616 (1992).

I would affirm.

---

[1] Except, of course, in those instances where we determine that the Legislature has acted in violation of the state or federal constitution.